James T. DUNLAP, Appellant,

v.

Ann C. DUNLAP, Appellee.

No. S–11750.

Supreme Court of Alaska.

March 17, 2006.

John C. Pharr, Law Offices of John C. Pharr, Anchorage, for Appellant.

Ann C. Dunlap, pro se, South Park, Pennsylvania.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

# I. INTRODUCTION

This case is a child support dispute. It regards a divorced father's obligation to use a portion of his retirement buyout to fund educational accounts for his children in lieu of using that portion to pay child support. According to the 1992 divorce settlement agreement between James and Ann Dunlap, James would deposit a portion of any retirement or severance buyout—equal to the portion that was payable as child support—into educational accounts for the couple's children. James received such a retirement buyout in 1994 and opened educational accounts that October. In 1995 James closed out the educational accounts after Superior Court Judge Larry D. Card refused to reduce James's child support obligations even though his income had declined. Judge Card reasoned, in part, that James's retirement buyout would allow him to continue making child support payments for a number of months, notwithstanding his reduced income. James did not appeal this ruling. In 2003 Ann Dunlap contacted her ex-husband regarding the educational account for their son Matthew, who was preparing to attend college in fall 2004. After James told her he had closed out the account, Ann sued and obtained a judgment against James. James appeals this judgment.

James has offered no excuse for his failure to contribute the required funds to the educational accounts. He is therefore precluded from challenging Judge Card's interpretation of his obligation to fund such accounts. James argues that the settlement agreement was too indefinite to be enforced, that the judgment constituted erroneous gap-filling, and that Ann had waived or was equitably estopped from arguing that James was obliged to provide funds to the educational accounts. Because these arguments lack merit, we affirm the judgment of the superior court.

# II. FACTS AND PROCEEDINGS

## A. Facts

James and Ann Dunlap were married in December 1982. Their marriage produced two children: James Matthew (Matthew) (b.1985) and Katelyn E. (b.1990). The couple separated in 1991 and were divorced in 1992. Ann received primary legal and physical custody of both children. James, who was an Army Warrant Officer stationed in Alaska at the time, was ordered to pay child support in the amount of $739.93 per month pursuant to

Alaska Civil Rule 90.3(a). Shortly thereafter, James moved for a modification of the support order because his military compensation package decreased when he was reassigned outside Alaska. The court agreed to modify the award, reducing James's obligation to $626.16 per month.

The couple's divorce settlement agreement contained a special provision regarding James's military retirement benefits. Although the agreement specified that James would retain "[a]ny and all interests in his military retirement," it also contained a provision addressing the disposition of any retirement benefits James might receive if he left the army prior to his retirement eligibility:

13. If plaintiff separates from the service prior to retirement, any severance received by plaintiff will be considered as income pursuant to Alaska Civil Rule 90.3 and the portion payable as child support (27% of the net) will be placed in an education fund in the children['s] names.

James left military service in 1994 and the military bought out his retirement benefits for a lump sum of $57,598. After taxes, James received $40,271. Pursuant to the settlement agreement, James deposited $10,000 [1] into two educational funds for his children on October 17, 1994.

After leaving the military, James moved for a second reduction in his child support obligations, citing his reduced income. In her opposition to James's motion, Ann contended that his reduced income was the temporary result of his status as a probationary employee of the post office. She argued that it was inappropriate to reduce his obligation based on his income as a probationary postal worker and that, in the meantime, James could afford to pay his full obligation because of his retirement buy-out. In response, James argued that his retirement buy-out had been largely spent. He stated that, pursuant to the settlement agreement, he had deposited $10,000 into the educational accounts for the children. He also noted that he had deposited $10,000 into a retirement account for himself, spent $4,000 on the children's vacations, and drew on the remaining funds to cover his own living expenses, especially for medical care.

Judge Card rejected James's motion, largely because James had not disclosed the retirement buyout in his motion for modification. Judge Card also concluded that, based on the retirement buyout, James would be able to afford his support obligations on his current income for another thirty-one months. Thus, he held that James had sufficient income for another thirty-one months and could not move again for a modification until January 1997.

On February 10, 1995, James cashed out the educational funds because "he needed the money to live on and continue to pay child support in the higher amount." He promised to replace the $10,000 at a later date and stated that he was currently paying $341.16 per month into the educational funds. James appears to have believed he could meet the requirement of paragraph 13 of the settlement agreement by eventually paying $10,000 into educational funds.

James moved for reconsideration of Judge Card's ruling. He argued that he did not have the entire $40,271 because he had deposited $10,000 into an educational fund pursuant to the settlement agreement and that he could not meet the $1,300 shortfall for thirty-one months. In response to this motion, the superior court amended the order on March 17, 1995. Although the superior court concluded that the $10,000 deposit did not alter Ann's right to child support payments under Civil Rule 90.3—since James's retirement buyout clearly constituted income under the rule—the court held that Ann agreed to forgo her property interest in that $10,000 in exchange for the creation of the educational funds. Therefore, the superior court reduced the amount of the retirement buyout that was available from $40,271 to $30,271, envisioning that the retirement buyout would make up for James's $1,300 short-

1. Although the agreement called for James to deposit 27% of the net into the education fund, the $10,000 payment represented only 24.8%.

James stated that he spent the difference ($670) on the children's summer vacation.

474

fall for twenty-four, rather than thirty-one, months.

At the time the parties were litigating James's motion for modification, James began paying only $285 per month in child support. According to James, this amount equaled twenty-seven percent of his current net income.[2] James stated that he was paying the balance of his obligation under the child support order—$341.16—into the children's educational funds. In response, Ann filed a motion to show cause why James should not be held in contempt for violating the child support order. James opposed the motion, arguing that he was only liable for twenty-seven percent of his income and that twenty-seven percent of his retirement buyout had already been allocated to the children's educational funds.

Before the court could rule on Ann's motion, James and Ann settled their dispute and stipulated that James would pay $450 per month, retroactive to January 1, 1995. As part of the stipulation, James agreed to forgo his right to appeal Judge Card's orders regarding his motion for modification.

Matthew turned eighteen in March 2003 when he was enrolled as a sophomore in college at Indiana University of Pennsylvania. Ann requested that James release the educational funds. But James had cashed out the account and there were no educational funds.

## B. Proceedings

Ann, appearing *pro se*, filed a motion to reduce to judgment in September 2004. She claimed that paragraph 13 of the divorce settlement agreement required James to create educational accounts in the children's names worth twenty-seven percent of his retirement buyout. Ann stated that James had closed out the educational accounts and had not provided any funds for Matthew's college. She asked the court for a judgment in the amount of $10,000 plus interest.

James opposed Ann's motion to reduce to judgment, maintaining that the 1995 litigation demolished the notion that the parties had intended for twenty-seven percent of his retirement buyout to be placed in educational accounts; rather, he maintained that the retirement funds were "intended to be used for an educational fund or to pay child support, but not both." James also argued that Ann had waived her contentions or that she was equitably estopped from making them, or both. Lastly, he argued that paragraph 13 of the settlement agreement was too indefinite to be enforced because it did not specify how the funds were to be administered or disbursed.

Ann filed a reply to James's opposition. She disputed James's interpretation of the settlement agreement and Judge Card's 1995 rulings. She also maintained that waiver and equitable estoppel did not apply and that the settlement agreement was not indefinite.

Superior Court Judge Stephanie E. Joannides entered judgment in favor of Ann on October 29, 2004 and awarded her $10,000 plus interest. James appeals from this decision.

## III. STANDARD OF REVIEW

We review a superior court's interpretation of a child support agreement as we would review the interpretation of any contract, *de novo*.[3] We review a superior court's enforcement of a divorce decree for abuse of discretion.[4]

## IV. DISCUSSION

### A. James Was Not Excused from Contributing Money to the Educational Funds.

Paragraph 13 of the Dunlaps' separation agreement states:

If plaintiff separates from the service prior to retirement, any severance received by plaintiff will be considered income pursuant to Alaska Civil Rule 90.3 and the portion payable as child support (27% of the

2. Twenty-seven percent is the applicable support rate for two children. Alaska R. Civ. P. 90.3(a)(2)(B).

3. *Gaston v. Gaston,* 954 P.2d 572, 574 (Alaska 1998).

4. *Beal v. Beal,* 88 P.3d 104, 111 (Alaska 2004).

net) will be placed in an education fund in the children['s] names.

James maintains that "[p]aragraph 13's intent was to set aside an educational fund with the child support portion of plaintiff's military retirement, or severance pay if he did not stay 20 years to qualify for a retirement." However, he contends that this intent was thwarted when Judge Card considered the retirement buyout (minus a $10,000 deposit into the children's educational accounts) to be included in his income under Civil Rule 90.3. Thus, Judge Card required him to set aside twenty-seven percent of the buyout for an educational fund *and* pay child support from the remainder of his buyout. We reject this argument because it is untimely.

James failed to appeal Judge Card's 1995 ruling, letting the determination stand for ten years, and he has not demonstrated that we should reopen it. When James and Ann litigated James's motion for modification in 1994 and 1995, the parties addressed how the buyout should be used to support their children. James contended that the settlement agreement specified that he need only place twenty-seven percent of his buyout in educational accounts for the children. Ann argued that the buyout should also be used to pay support when James's income was temporarily reduced.

After Judge Card rejected James's motion for modification—largely because James had not disclosed the retirement buyout in his motion papers—James moved for reconsideration, "ask[ing] the court to take into account that under [the settlement agreement,] [James] was required to put 27% of his net income into an education fund for the children." He argued that, because of his lack of income, the court's refusal to reduce his obligation would force him to dip into the educational accounts. In her opposition to James's motion, Ann argued that the retirement buyout constituted income under Civil Rule 90.3.

Judge Card agreed with Ann that the retirement buyout was income under Rule 90.3. He also interpreted the settlement agreement as waiving Ann's rights to a percentage of James's retirement—i.e., Ann waived her right to receive child support as the children's custodian—in exchange for James's promise to provide a college fund for the children. The court concluded that this bargain did not justify "a reduction in the amount of child support that should be paid." Presumably this was because Judge Card believed that James's support obligation accorded with his long term income, and that the buyout allowed James to meet this obligation without undue hardship even though his income was temporarily reduced. The court did recognize that the $10,000 that James had claimed was deposited into educational accounts reduced the funds available to James. Consequently, the court amended its previous order to the extent that James could apply for a modification after twenty-four months. James commenced an appeal of this order but later abandoned it.

James may have had a claim that the superior court erred in concluding that James was both required to place $10,000 in the educational accounts and that the retirement money would be considered income for the purposes of calculating child support. But the time to appeal was in 1995. James did not appeal, instead explicitly waiving his right to appeal the superior court's "recent rulings on his motion to modify child support" as part of the April 20, 1995 stipulation. In return for this waiver, James received the relief he wanted: his child support obligations were reduced from $626 to $450 monthly.

 James abandoned his appeal, letting the superior court's order stand. The relief James seeks is now barred by the law of the case. This is the principle that "issues previously adjudicated can only be reconsidered where there exist 'exceptional circumstances' presenting a 'clear error constituting a manifest injustice.'"[5] James has not presented evidence of either condition. Although our doctrine of law of the case generally refers to issues that have previously been reviewed at

---

5. *State, Commercial Fisheries Entry Comm'n, v. Carlson,* 65 P.3d 851, 859 (Alaska 2003) (quoting *Patrick v. Sedwick,* 413 P.2d 169, 173–74 (Alaska 1966) and *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.,* 778 P.2d 581, 583 (Alaska 1989)).

the *appellate* level, the doctrine is equally applicable to issues that have been fully litigated in the superior court and as to which no timely appeal has been made.[6]

### B. Paragraph 13 Is Sufficiently Definite To Be Enforced.

■ James contends that paragraph 13 of the settlement agreement is too indefinite to be enforced. He argues:

> The parties never agreed on how to administer the educational fund. There was no definition of what educational purposes the fund is to be used for. There was no mechanism for agreement on the use of funds. . . . There is no way for the court to determine how the educational fund of paragraph 13 is to be administered, and it therefore cannot be enforced.

James is certainly correct that paragraph 13 does not specify how the educational fund is to be administered or what educational purpose it is designed to serve. But this fact does not render the agreement too indefinite for enforcement. We have previously held that while "[v]agueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement" may "prevent the creation of an enforceable contract[,] . . . courts should give legal effect to the intentions of the parties where necessary to reach a fair and just result."[7] Moreover, as Professor Corbin has explained, "[t]he fact that the parties have left some matters to be determined in the future should not prevent enforcement, if some method of determination independent of a party's mere 'wish, will, and desire' exists."[8]

The essential terms of the bargain—Ann forswears her right to the portion of James's retirement buyout (either as child support or as part of her share of the marital estate, or both) in exchange for the creation of educational accounts with those funds—seem clear. And the absence of agreed-upon procedures for administering and distributing the educational funds should not be fatal to this bargain. It seems reasonable to conclude that the parties would have deferred decisions regarding distribution until the children's educational needs were more apparent (in 1992, the Dunlaps' children celebrated their seventh and second birthdays). Moreover, James's conduct evinces such an understanding: Upon opening the educational accounts in 1994, he stated that he would act as custodian and that the disbursement would be left to the discretion of the children.

### C. The Superior Court Did Not Err in Granting Judgment to Ann.

■ James argues that Judge Joannides erred in granting judgment to Ann because "nowhere does [the settlement agreement] state that upon default in the maintenance of the educational fund, judgment is to be entered for the same amount in favor of Ann." James contends that the court's decision to grant judgment to Ann erroneously filled a gap in the contract because "[t]here is no indication in the record that James would have agreed to the entry of judgment in Ann's favor for the amount of the educational fund."

This argument misconstrues the basis of the judgment. Although a contract may specify that, in case of a breach, a party is entitled to a specific remedy, a contract need not expressly provide for a particular remedy in order for it to be available.[9] Thus we reject James's argument that the judgment constituted improper gap-filling.[10]

---

6. *See Hermosillo v. Hermosillo*, 797 P.2d 1206, 1208 (Alaska 1990) (presentation, in 1989, of motion nearly identical to motion denied in 1988 constituted untimely appeal).

7. *George v. Custer*, 862 P.2d 176, 179 (Alaska 1993) (quoting *Stenehjem v. Kyn Jin Cho*, 631 P.2d 482, 485 (Alaska 1981)).

8. 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 4.1, at 536 (1993).

9. *See generally* RESTATEMENT (SECOND) OF CONTRACTS §§ 344–45 (1981).

10. James does not discuss the slight incongruity that his failure to provide a benefit for his children was remedied by an award to his ex-wife. Since James has not raised this issue, we do not resolve it. We note, however, that Ann appears to be bearing some of the costs of her son's education and the award might be viewed as restitutionary. Moreover, superior courts are given discretion to enforce an order dividing property following divorce. *Beal v. Beal*, 88 P.3d 104, 110 (Alaska 2004). The superior court may have concluded that the best way of enforcing

**D. Ann Was Not Equitably Estopped from Arguing that James Was Obliged To Deposit $10,000 into the Educational Fund.**

■ James contends that Ann argued in 1995 and 1996 that twenty-seven percent of his retirement buyout should be used to pay ongoing child support. Consequently, he maintains that Ann has waived the argument that twenty-seven percent of his buyout should have gone into educational accounts for the children. He also claims that he relied on her arguments and cashed out the educational fund in order to meet his child support obligations. Because of this reliance, he argues that Ann should be equitably estopped from arguing that he was obliged to put twenty-seven percent of his buyout into educational accounts. Neither claim is persuasive.

Contrary to James's assertion, the record contains no instance where Ann argued "that 27% of James'[s] severance pay should be used to pay ongoing child support." Though she did state that the retirement buyout should be used to calculate James's income, and that it would cushion any hardship faced by James in meeting his obligation, Ann never argued for a twenty-seven percent carve-out from James's retirement buyout for the purpose of making child support payments.

In 1995 and 1996, litigation between James and Ann centered around three motions: James's November 25, 1994 motion to modify the child support order, Ann's March 2, 1995 motion to hold James in contempt, and Ann's March 22, 1996 motion to modify the support order. In regard to the first motion, Ann filed an opposition, and an opposition to James's motion for reconsideration. Ann did not argue in either opposition that twenty-seven percent of the buyout should be used to pay child support. Although she argued that James's present income should be used to determine his adjusted income under Civil Rule 90.3, she also maintained that she had "no entitlement to [the buyout]."

Ann's affidavit in support of her motion to hold James in contempt under Civil Rule 90 did not mention the retirement buyout or the settlement agreement. Ann's affidavit in support of her motion for a modification of the child support order was largely focused on the fact that James was hired as a full-time postal employee in August 1995 and had become more emotionally stable. And while she mentioned the retirement buyout, she did not contend that twenty-seven percent—$10,873—should be set aside for child support. Rather, she stated:

> With the severance payment of $57,000 [James] received upon leaving the military and any interest earned as income resulting from the severance payment, it should cause no undue hardship on [James] to support this modification of payments.

Because the record contains no evidence of the alleged arguments upon which James's motion is based, we reject James's waiver and equitable estoppel arguments.

## V. CONCLUSION

James is precluded from challenging his obligation under the settlement agreement by his failure to appeal Judge Card's March 12, 1995 order. Additionally, James's other arguments—that paragraph 13 is too indefinite to be enforced; that Judge Joannides erroneously filled a gap in the contract by awarding judgment to Ann; and that Ann had waived or was equitably estopped from claiming that James was obliged to deposit twenty-seven percent of his retirement buyout into educational accounts—lack merit. For these reasons, we AFFIRM the order of the superior court.

the settlement agreement was to award a judgment to Ann as opposed to her son.