*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JAMES E. BARBER,<br><br>   Appellant,<br><br>  v.<br><br>STATE OF ALASKA,<br>DEPARTMENT OF<br>CORRECTIONS,<br><br>   Appellee.<br>_____<br><br>BILLY JACK WIGLESWORTH,<br><br>   Appellant,<br><br>  v.<br><br>STATE OF ALASKA,<br>DEPARTMENT OF<br>CORRECTIONS,<br><br>   Appellee.<br>_____ | Supreme Court Nos.<br>S-15645/15655/15836<br>(Consolidated)<br><br>Superior Court No. 3AN-81-05274 CI<br><br>O P I N I O N<br><br>No. 7159 – March 17, 2017 |

MATTHEW M. MOORE, )
)
        Appellant, )
)
    v. )
)
STATE OF ALASKA, )
DEPARTMENT OF )
CORRECTIONS, )
)
        Appellee.[1] )
_____ )

      Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

      Appearances: James E. Barber, pro se, Anchorage, Billy Jack Wiglesworth, pro se, Wasilla, and Matthew M. Moore, pro se, Palmer, Appellants. John K. Bodick, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellees.

      Before: Stowers, Chief Justice, Maassen and Bolger, Justices. [Fabe and Winfree, Justices, not participating.]

      STOWERS, Chief Justice.

## I. INTRODUCTION

      Beginning in 2013 a number of pro se prisoners moved for the superior

---

    [1]    The appellants in these cases filed under the caption of the 1981 class action *Cleary et al. v. Smith et al.* "Because [they] [are] not authorized to represent the class, we have re-named [these] case[s]." *Hertz v. State, Dep't of Corr.* (*Hertz II*), 230 P.3d 663, 663 n.1 (Alaska 2010) (internal cross-references omitted).

court to enforce the terms of the 1990 Final Settlement Agreement and Order[2] in the *Cleary* case,[3] a class action by inmates regarding prison conditions. In 2014 Superior Court Judge John Suddock dismissed the prisoners' motions, concluding that the Final Settlement Agreement was unenforceable because it had been terminated in 2001 when Superior Court Judge Elaine M. Andrews found that the requirements for termination had been met. But Judge Andrews did not terminate the Final Settlement Agreement because she determined that the Alaska Prison Litigation Reform Act was only constitutional if it did not terminate the Final Settlement Agreement. Judge Andrews's 2001 Order became the law of the case when it was issued. Because Judge Suddock failed to make required findings when reversing the law of the case, we reverse Judge Suddock's Order and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. The *Cleary* Case

*Smith v. Cleary* describes the *Cleary* Final Settlement Agreement:

> This case began in 1981 as a class action brought against the state by Alaska prisoners challenging prison conditions. The plaintiffs formed three subclasses: pretrial detainees (subclass A), sentenced prisoners in state owned or operated correctional centers (subclass B), and prisoners held by the state in federal facilities (subclass C). Although the state and subclass C settled in 1983, litigation continued with the remaining subclasses until the parties entered a comprehensive settlement, which the superior court incorporated in a consent decree in 1990.
>
> The settlement agreement applied to "all inmates, with some exceptions, who are or will in the future

---

[2]     Also referred to as the consent decree.

[3]     Final Settlement Agreement and Order, *Cleary v. Smith*, No. 3AN-81- 05274 CI (Alaska Super., Sept. 21, 1990).

be incarcerated in correctional facilities owned or operated by the state" and bound the Department of Corrections and "any successor department, division, or agency of the state of Alaska which is statutorily responsible for the administration of the state's adult correctional facilities." It included elaborate provisions for future operation of Alaska prisons, enumerated rights of inmates, guaranteed the availability of specific rehabilitative programs and services, required the state to implement an inmate classification system, created population guidelines, and established caps to eliminate overcrowding. The agreement also established mechanisms to monitor ongoing compliance, including a provision calling for a designated superior court judge to have continuing jurisdiction over alleged violations.[4]

The Final Settlement Agreement "ordinarily allows compliance challenges to be prosecuted individually by prisoners who have exhausted all available administrative remedies."[5]

## B.     Alaska Prison Litigation Reform Act And 2001 Superior Court Order

In 1999 the Alaska Legislature enacted the Alaska Prison Litigation Reform Act (APLRA), AS 09.19.200, which established standards for terminating prospective relief under the Final Settlement Agreement and any other litigation challenging prisoner conditions in Alaska. Alaska Statute 09.19.200(c) provides:

Prospective relief ordered in a civil action with respect to correctional facility conditions, including prospective relief ordered under a consent decree, regardless of whether that civil action was filed or the relief ordered before or after

---

[4]     *Smith v. Cleary*, 24 P.3d 1245, 1246-47 (Alaska 2001).

[5]     *Id.* at 1251. Administrative remedies are set out in the Alaska Administrative Code and the State of Alaska Department of Corrections Policies and Procedures. *See* 22 Alaska Administrative Code (AAC) 05.185 (2016); State of Alaska, Dep't of Corr., Policies & Procedures 808.03 (2006), http://www.correct.state.ak.us/corrections/pnp/pdf/808.03.pdf.

August 30, 1999, shall be terminated upon the motion of the defendant unless the court finds that there exists a current violation of a state or federal right . . . .

In 2000 the Department moved to terminate the Final Settlement Agreement pursuant to AS 09.19.200(c).[6] The plaintiffs opposed that motion and argued that the APLRA was unconstitutional.[7] Judge Andrews ruled that the APLRA was constitutional provided that it only terminated the prospective effect of the Final Settlement Agreement and not the Agreement itself.[8] She concluded that prospective relief under the APLRA is limited to remedy violations of state or federal law.[9]

In 2001 Judge Andrews held another hearing on the status of the Final Settlement Agreement.[10] The court-appointed compliance monitor reported that all matters referred to him were resolved in conformity with the Agreement and that judicial oversight was no longer necessary; the court then terminated active judicial supervision in the case.[11]

Judge Andrews also explained that the majority of federal courts had terminated previously issued prisoner-rights consent decrees under the federal equivalent

---

[6]     Decision and Order, *Cleary v. Smith*, No. 3AN-81-05274 CI, at 2 (Alaska Super., July 3, 2001).

[7]     *Id.* at 2-3.

[8]     *Id.* at 3.

[9]     *Id.*

[10]     *Id.*

[11]     *Id.*

of the APLRA.[12]  But she instead adopted the approach in *Gilmore v. California*[13] and decided that the APLRA should be construed to leave the Final Settlement Agreement intact while restricting the court's authority to order continuing prospective relief under the Agreement.[14]  Judge Andrews noted that the *Gilmore* court "described the consideration of whether the termination of consent decrees violates the separation of powers doctrine as a 'grave constitutional question whether Congress can command the courts retroactively to terminate a final judgment.' "[15]  Judge Andrews agreed with *Gilmore* that "it would pose a grave constitutional question if the Alaska Legislature was attempting to require the court to terminate a final order and judgment rather than merely terminate the relief available under the consent decree."[16]  She therefore avoided "the more difficult question of constitutionality . . . by construing the APLRA narrowly to terminate only prospective relief due parties under the consent decree but not the consent decree itself."[17]  No party appealed Judge Andrews's decision, and that decision became law of the case.

### C.    Current Challenges

#### 1.    James Barber

In October 2013 James Barber and four other inmates housed at Spring Creek Correctional Center in Seward each filed 30 identical motions under the *Cleary*

---

[12]     *Id.* at 6.

[13]     220 F.3d 987 (9th Cir. 2000).

[14]     Decision and Order, *Cleary v. Smith*, No. 3AN-81-05274 CI, at 6-8 (Alaska Super., July 3, 2001).

[15]     *Id.* at 7 (quoting *Gilmore*, 220 F.3d at 1000).

[16]     *Id.* at 8.

[17]     *Id.*

heading alleging violations of the Final Settlement Agreement. In February 2014 the Goose Creek Correctional Center in Wasilla began restricting prisoners from sending mail to one another "except as allowed by the superintendent." In April 2014 after Barber had been transferred to Goose Creek, he and nine other inmates filed motions under the *Cleary* heading regarding the Department of Corrections' decision to prohibit prisoner-to-prisoner mail communication. The inmates contended that the Department's policy violated the Final Settlement Agreement.

### 2. Billy Jack Wiglesworth

Billy Jack Wiglesworth was already a prisoner at the Goose Creek Correctional Center when it began prohibiting prisoner-to-prisoner mail. In March 2014 after exhausting his administrative remedies through the prison grievance system Wiglesworth, along with three other inmates, filed a motion in the superior court. Wiglesworth's motion alleged violations of the Final Settlement Agreement, the Alaska Administrative Code, the Alaska Constitution, and the Department's procedures. Although Wiglesworth contended that the Department's action violated his constitutional right to free speech, he requested that the court in its discretion order prospective relief for 18 months to give the parties an opportunity to separately litigate the free speech issue.[18]

The Department opposed Wiglesworth's motion and argued that the prisoners had failed to show that the restriction was a violation of his state or federal

---

[18]     *See* AS 09.19.200(e) ("[A] court may order prospective relief as provided in a consent decree without [finding a violation of a state or federal right] provided the prospective relief does not continue for a period of more than two years . . . ."); *Hertz v. State, Dep't of Corr.* (*Hertz II*), 230 P.3d 663, 670-71 (Alaska 2010) (noting that the superior court may require the Department to abide by the Final Settlement Agreement for up to two years without finding violation of a state or federal right but finding that Hertz sought an injunction lasting longer than two years).

rights. The Department asserted that 22 AAC 05.520(a) provided it with the authority to restrict prisoner mail where "the security of the facility requires limitation"; it claimed that the restriction was required to combat an increase in gang activity in Alaska prisons.

In his reply Wiglesworth again suggested that the court could provide relief for up to two years while the parties litigated the issue of prisoner free speech. Wiglesworth noted the Department did not support its claim that gang activity had increased or suggest that its previous practice of restricting mail on a case by case basis was no longer sufficient. He argued that if the Department was correct in asserting that new concerns about increasing gang violence prompted the change in policy, the Department should have sought modification of the Final Settlement Agreement pursuant to Alaska Civil Rule 60(b).

In April 2014 Goose Creek instituted a new rule that inmates would be able to receive black and white photocopies of all incoming letters and would not receive the originals.[19] Wiglesworth moved for a preliminary injunction and temporary restraining order pending the outcome of the administrative process. The Department opposed the motion and argued that Wiglesworth failed to show that its practice violated state or federal law, that security concerns justified the new procedure, and that the new procedure did not violate the Final Settlement Agreement.

### 3. 2014 Superior Court Order

In July 2014 Judge Suddock concluded that the superior court was no longer authorized to enforce the Final Settlement Agreement. Judge Suddock explained

---

[19] The originals of greeting cards would be stored in the inmate's property box, and photographs that did not test positive for drugs would still be delivered. Wiglesworth claims that neither the copying nor storage of mail was always done in practice.

that Judge Andrews's 2001 Order misinterpreted *Gilmore v. California*.[20]   Judge Suddock noted that under the APLRA the State as a moving party was entitled to termination of remedies as to the Final Settlement Agreement's provisions absent allegations of current and ongoing violations of state or federal rights.  Because Judge Andrews did not find any constitutional rights when she issued her order in 2001, Judge Suddock concluded the Department had met the APLRA's requirements for termination of the Final Settlement Agreement.

Based on the fact that the Department had satisfied the requirements for termination of the Final Settlement Agreement in 2001, Judge Suddock determined that the Agreement was in fact terminated by Judge Andrews's 2001 Order, although the superior court failed to recognize that at the time.

Judge Suddock then turned to the prisoners' argument that the court is authorized to enforce the Agreement's provisions under a lesser standard for a period of two years.  He declined to invoke the court's authority, saying that "the court would invoke its special two-year injunctive power only under the clearest of circumstances, which it [found] [were] not present" and that "changed conditions readily support[ed] [the Department's] safety-based policy decision to abandon inmates' *Cleary* rights to receive any publications from personal sources."

Finally, Judge Suddock described the status of prisoners' rights to challenge prison conditions after termination:

> If any inmate desires to file a future claim alleging a state or federal rights violation not grounded in the terms of the consent decree, which extends to the entire class and seeking a narrowly-tailored, least-intrusive remedy that does not unduly interfere with the appropriate operation of the criminal justice system, that course of action remains open,

---

[20]   220 F.3d 987 (9th Cir. 2000).

following exhaustion of administrative remedies. The court then dismissed the inmates' claims.

Barber and Wiglesworth appeal.

### 4.    Matthew Moore

Matthew Moore is a pre-trial detainee being held by the Department at the Mat-Su Pretrial Facility in Palmer who was previously held at the Goose Creek Correctional Center. While at Goose Creek, Moore was housed in the segregation unit. Goose Creek enacted a rule that denied prisoners access to showers, recreation, phone calls, and the law library if they failed to comply with Goose Creek's cell inspection policies. In September 2014 Moore was denied access to showers, recreation, and the law library for non-compliance with the inspection policy. Moore asserts that the Department imposed that discipline without providing a hearing or any other procedure for contesting the determination.

Moore complained to prison staff about the policy, but the staff did not address his complaints. Moore then filed a formal grievance saying that the policy violated the Department's Policies and Procedures and sections of the Alaska Administrative Code, but Goose Creek denied his grievance. On December 9, 2014, Moore filed a level 3 grievance appeal with the Office of the Commissioner. On January 26, 2015, the Office of the Commissioner sent Moore a letter acknowledging the Department's Policies and saying the Goose Creek handbook would be updated to reflect that prisoners would lose only their personal phone time for failing to pass the daily inspection and would not lose their rights to showers, daily recreation, or legal phone calls. Moore claims that this response was untimely under the applicable Department

policy.[21]

On January 9, 2015, before the Office of the Commissioner had responded, Moore filed a motion under the *Cleary* heading to enforce the Final Settlement Agreement. Moore's Motion to Enforce and for Declaratory Relief alleged violations affecting prisoners housed at Goose Creek. Specifically, Moore alleged that prisoners were being punished in violation of the Agreement, the Alaska Administrative Code, the Department's Policies and Procedures, and state and federal due process. Moore argued that "if a prisoner is citing the [Final Settlement Agreement] or *Cleary* litigation and is claiming violations of constitutional rights, [which] are still [enforceable] under the APLRA, then the grievance is part of the open and active *Cleary* litigation." He also contended that he exhausted his administrative remedies "[b]ecause the grievance is the administrative remedy." Finally, he contended that "this declaratory judgment can be narrowly fashioned so as to not improperly thrust the Judiciary into the Executive Branch's day to day operations of the prisons."

### 5. 2015 Superior Court Order

On January 16, 2015, Superior Court Judge Suddock rejected Moore's motion. Judge Suddock concluded that Moore was bringing a disciplinary appeal, noted that Moore failed to indicate that he sought to represent the *Cleary* class, and cited *Hertz II* to say this court had on "parallel facts" re-captioned a case filed under the *Cleary* heading in the prisoner's own name. Judge Suddock suggested that Moore re-file his case as a stand-alone administrative appeal captioned under his own name and said that

---

[21]   *See* State of Alaska, Dep't of Corr., Policies and Procedures 808.03(VII)(A)(2)(j) (2006) ("The Standards Administrator shall respond in writing directly to the prisoner within 20 working days. This decision is the final administrative action by the Department on the grievance.").

"[t]he court will take no further action regarding his filing within the *Cleary* case."

Moore moved for reconsideration. He argued that he was not bringing a prisoner disciplinary appeal, that he had asked to represent the *Cleary* class by implicit statement, that he had the right to bring the enforcement action pro se, and that his motion did not present the court with parallel facts to *Hertz II*.[22] Additionally, Moore contended that the superior court lacked statutory jurisdiction to review Department grievances through the administrative appeal process, meaning that he would be left without any remedy.

Judge Suddock denied Moore's motion for reconsideration. Judge Suddock conceded that he had mistakenly ordered Moore to file a free-standing administrative appeal, and he instead directed Moore to file an action for declaratory and injunctive relief under his own name. Judge Suddock asserted that Moore would not be prejudiced by proceeding consistently with *Hertz II*.

Moore appeals. For purposes of this decision, we consolidate the three appeals.[23]

## III. STANDARD OF REVIEW

Principles of contract interpretation govern the construction and enforcement of the *Cleary* Final Settlement Agreement.[24] "The settlement agreement's scope and effect raise questions of contract law that we review de novo."[25] "In the

---

[22] In *Hertz II* a pro se prisoner moved the court to require the Department of Corrections to pay prisoners money upon being released from prison as provided for in the *Cleary* settlement. *Hertz II*, 230 P.3d at 664.

[23] *See* Alaska R. App. P. 204(i).

[24] *See Hertz II*, 230 P.3d at 669.

[25] *Smith v. Cleary*, 24 P.3d 1245, 1247 (Alaska 2001).

absence of factual disputes, we review questions of contract formation and interpretation de novo. . . . If we agree, on de novo review, that a valid settlement agreement exists, the superior court has no discretion to decline to enforce that agreement."[26]

## IV.  DISCUSSION

The Final Settlement Agreement "ordinarily allows compliance challenges to be prosecuted individually by prisoners who have exhausted all available administrative remedies."[27]  Those prisoners' motions, although filed under one case heading, are similar to separate actions because each motion involves different prisoners, correctional facilities, and facts.  The superior court orders adjudicating those claims are final judgments subject to appeal.  But those motions are not new actions and are instead motions within an existing case, meaning that rulings on *Cleary* motions fall within the law of the case doctrine.  We conclude that Judge Andrews's 2001 Order is the law of the case, and that overruling Judge Andrews's 2001 Order required Judge Suddock to make findings in 2014 that he did not make.  We therefore reverse Judge Suddock's 2014 Order.

"The law of the case doctrine, which is 'grounded in the principle of stare decisis' and 'akin to the doctrine of res judicata,' generally 'prohibits the reconsideration of issues which have been adjudicated in a previous appeal in the same case.' "[28] Although it is true that "[a] trial judge who succeeds a prior trial judge in a case while

---

[26]     *Chilkoot Lumber Co. v. Rainbow Glacier Seafoods, Inc.*, 252 P.3d 1011, 1014-15 (Alaska 2011) (footnotes omitted) (citations omitted).

[27]     *Smith*, 24 P.3d at 1251.

[28]     *Beal v. Beal*, 209 P.3d 1012, 1016 (Alaska 2009) (first quoting *Alaska R.R. Corp. v. Native Vill. of Eklutna*, 142 P.3d 1192, 1201 (Alaska 2006); then quoting *State, Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 859 n.52 (Alaska 2003); and then quoting *Carlson*, 65 P.3d at 859 n.52).

the case is still in the trial court may generally reconsider a decision made by the prior judge without violating the law of the case doctrine[,] . . . that freedom is not available where . . . the prior judge's decision has been affirmed on appeal."[29]

But the law of the case doctrine is broader than just those issues decided on appeal: in the context of the *Cleary* Final Settlement Agreement, the law of the case doctrine is applicable to issues that were fully litigated resulting in a final order which was not timely appealed. In *Dunlap v. Dunlap*, James Dunlap did not appeal the superior court's 1995 ruling that a certain retirement buyout was considered income under a marital separation agreement.[30] In 2004 Ann Dunlap, James's former wife, alleged that James failed to satisfy one of the conditions of the separation agreement.[31] James argued that the superior court incorrectly classified his retirement buyout as income, and he therefore did not violate the terms of the agreement.[32] We rejected James's argument: although we acknowledged that "James may have had a claim that the superior court erred," we concluded that "the time to appeal was in 1995."[33] We held that "[t]he relief James seeks now is barred by the law of the case,"[34] and we observed that "[a]lthough our doctrine of law of the case generally refers to issues that have previously been reviewed at the *appellate* level, the doctrine is equally applicable to issues that have been

---

[29]     *Id*. at 1017 (citations omitted).

[30]     131 P.3d 471, 474-75 (Alaska 2006).

[31]     *Id*. at 474.

[32]     *Id*. at 475.

[33]     *Id*.

[34]     *Id*.

fully litigated in the superior court and as to which no timely appeal has been made."[35] Thus a final judgment that could have been appealed — but was not — becomes law of the case. And as we stated in *Dunlap*, "issues previously adjudicated can only be reconsidered where there exist 'exceptional circumstances' presenting 'a clear error constituting a manifest injustice.' "[36] In *Smith v. Cleary* we applied a law of the case analysis to a superior court order in *Cleary* litigation.[37]

In 2000 the Department moved to terminate the Final Settlement Agreement pursuant to the APLRA.[38] The *Cleary* class opposed the motion arguing that the APLRA was unconstitutional.[39] Judge Andrews issued a decision declaring the APLRA constitutional, but she determined that the APLRA only "withstands constitutional scrutiny provided that the APLRA only terminates the prospective effect of the [*Cleary* settlement] and not the [*Cleary* settlement] [itself]."[40] After another hearing in 2001,

---

[35]     *Id*. at 475-76 (emphasis in original) (citing *Hermosillo v. Hermosillo*, 797 P.2d 1206, 1208 (Alaska 1990) (presentation, in 1989, of motion nearly identical to motion denied in 1988 constituted untimely appeal)).

[36]     *Id*. at 475 (quoting *State, Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 859 (Alaska 2003)).

[37]     24 P.3d 1245, 1248-49 (Alaska 2001) (ruling that a 1986 superior court order only applied to Subclass C and therefore was not the law of the case with respect to Subclasses A and B).

[38]     Decision and Order, *Cleary v. Smith*, No. 3AN-81-05274 CI, at 2 (Alaska Super., July 3, 2001). The APLRA terminated the prospective relief that the superior court could award to prisoners who brought claims under the Final Settlement Agreement, and it set out the requirements the Department must satisfy before it may move to terminate the Final Settlement Agreement. AS 09.19.200(c)-(d).

[39]     Decision and Order, at 2-3.

[40]     *Id.* at 3.

-15-                                                                                        **7159**

Judge Andrews issued a decision reaffirming her prior determination that "it would pose a grave constitutional question if the Alaska Legislature was attempting to require the court to terminate a final order and judgment rather than merely terminate the relief available under the consent decree."[41] Based on those concerns, Judge Andrews concluded that the APLRA was constitutional only if it left the Final Settlement Agreement intact while restricting the court's authority to order continuing prospective relief under the Agreement; she thus avoided "the more difficult question of constitutionality . . . by construing the APLRA narrowly to terminate only prospective relief due parties under the consent decree but not the consent decree itself."[42]

Judge Andrews's 2001 Order was a final judgment. "A final judgment extinguishes all claims 'with respect to all or any part of the transaction, or series of connected transactions' out of which the previous action arose."[43] We have "identified several indicia that a prior judgment was final: 'that the parties were fully heard, that the court supported its decision with a reasoned opinion, [and] that the decision was subject to appeal or was in fact reviewed on appeal.' "[44] In the context of the constitutionality of the APLRA and the legal status of the Final Settlement Agreement following the enactment of the APLRA, the parties were fully heard: the Department filed a motion requesting that the superior court terminate the 1990 Final Settlement Agreement and one of the 1983 consent decrees, the plaintiffs opposed that motion, and the superior

---

[41]     *Id*. at 8.

[42]     *Id*.

[43]     *Jackinsky v. Jackinsky*, 894 P.2d 650, 654 (Alaska 1995) (quoting *Tolstrup v. Miller*, 726 P.2d 1304, 1306 (Alaska 1986)).

[44]     *Alaska Wildlife Alliance v. State*, 74 P.3d 201, 206 (Alaska 2003) (alteration in original) (quoting *Usibelli Coal Mine, Inc. v. State, Dep't of Nat. Res.*, 921 P.2d 1134, 1142 (Alaska 1996)).

court held two separate hearings on the issue.[45]  The court also supported its decision with a reasoned opinion:  Judge Andrews issued a 31-page Decision and Order in 2001 that carefully considered the APLRA's constitutionality and prisoners' continuing rights under the Final Settlement Agreement in light of the APLRA.[46]

Both the Department and the *Cleary* class could have appealed Judge Andrews's order, but they did not.[47]  Following the Order, the Department and *Cleary* class counsel proceeded as though Judge Andrews's order must be given effect; so did this court.[48]  Because Judge Andrews's 2001 Order was a final judgment that could have been but was not appealed, it became the law of the case and was not subject to reconsideration absent a determination that " 'exceptional circumstances' present[ed] 'a clear error constituting a manifest injustice.' "[49]

In July 2014 Judge Suddock dismissed the prisoners' motions based on his conclusion that Judge Andrews's 2001 Order had actually terminated the Final Settlement Agreement.  Judge Suddock concluded, "The provisions of the consent decree

---

[45]    Decision and Order, at 2-3.

[46]    *Id*. at 1-31.

[47]    *See Dunlap v. Dunlap*, 131 P.3d 471, 475 (Alaska 2006) (quoting *State, Commercial Fisheries Comm'n v. Carlson*, 65 P.3d 851, 859 (Alaska 2003)).

[48]    In *Hertz II* Hertz challenged the denial of "gate money" upon his release, for which the Final Settlement Agreement provided.  *Hertz II*, 230 P.3d 663, 665-66 (Alaska 2010).  We explained, "The [2001] superior court order specifically required that all future claims for prospective relief under the [Final Settlement Agreement] must show a current violation of a state or federal right, as required by the APLRA.  The *Cleary* class, of which Hertz was a member, did not appeal that order." *Id.* at 668.  Our past reliance on the 2001 Order provides additional support for our holding today.

[49]    *Dunlap v. Dunlap*, 131 P.3d 471, 475 (Alaska 2006) (quoting *State, Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 859 (Alaska 2003)).

that the inmates now seek to enforce are in fact unenforceable by the court, because they were terminated by Judge Andrews in her 2001 order." But Judge Suddock overlooked the constitutional concerns Judge Andrews had noted in her order: the Agreement was not terminated by Judge Andrews's 2001 Order because Judge Andrews determined that terminating the Agreement itself would present grave constitutional concerns. Judge Suddock also failed to address the preclusive effect of Judge Andrews's Order, and he failed to make sufficient findings to reverse the law of the case.[50] Because the superior court did not make sufficient findings to reverse the law of the case, we reverse Judge Suddock's 2014 Order and reinstate the rights of prisoners as they have existed since Judge Andrews's 2001 Order: prisoners may bring motions to enforce the Final Settlement Agreement provided that they exhaust their administrative remedies, they allege violations of the Agreement and of a state or federal right, the violations affect the entire class, the relief requested utilizes the least intrusive means, and the court considers the adverse effects on public safety and the criminal justice system.[51]

---

[50] Moreover, it does not appear that the Department argued before Judge Suddock that Judge Andrews's 2001 Order terminated the Final Settlement Agreement or that exceptional circumstances required revisiting Judge Andrews's Order. And the Department appeared to treat the *Cleary* settlement as good authority in its briefs before the superior court. In its Opposition to Wiglesworth's Motion for Enforcement of Consent Decree, the Department argued that "Wiglesworth's motion must be denied because he has failed to prove that this restriction . . . constitutes the violation of a state or federal right as required by AS 09.10.200(a)."

[51] *See* AS 09.19.200(a); Decision and Order, *Cleary v. Smith*, No. 3AN-81-05274 CI, at 1-8 (Alaska Super., July 3, 2001). We note that the Department may seek to revisit Judge Andrews's Order by filing a motion in the superior court to do so. We do not decide what standard the superior court must apply in that situation, should it arise, but we suggest two possibilities. First, the Department could move for modification of or relief from the Final Settlement Agreement and Order under Section IX(B) of the agreement. This section provides that "an application to the court to modify

(continued...)

Our conclusion today is supported by the policies underlying the law of the case doctrine. As we noted in *Beal v. Beal*, "[t]he law of the case doctrine is 'a doctrine of economy and of obedience to the judicial hierarchy.' The strong policy reasons behind it include '(1) avoidance of indefinite litigations; (2) consistency of results in [the] same litigation; (3) essential fairness between the parties; and (4) judicial efficiency.' "[52] These principles are served in this case by requiring the parties to abide by Judge Andrews's 2001 Order. Without applying the law of the case here, there is nothing to stop subsequent superior courts from reinterpreting the APLRA and creating further uncertainty surrounding the *Cleary* litigation. And although we are aware that this litigation has continued for many years and that ending the *Cleary* litigation may be a worthwhile goal, consistency and fairness require that the Department allege and prove sufficient facts and the superior court make sufficient findings before reversing Judge Andrews's 2001 Order and terminating the Final Settlement Agreement.

Because we reinstate prisoners' rights to bring motions under the *Cleary* heading, the superior court on remand must determine whether Barber's, Wiglesworth's, and Moore's motions satisfy the requirements of the APLRA. We note that, although

---

[51](...continued)
or vacate shall be governed by the principles of Civil Rule 60(b)(5) and (6)." Second, the Department could move for reconsideration of Judge Andrews's 2001 order. Because this order is the law of the case, the Department would have to show that " 'exceptional circumstances' present[ed] 'a clear error constituting a manifest injustice.' " *Dunlap*, 131 P.3d at 475 (quoting *Carlson*, 65 P.3d at 859).

[52]     209 P.3d 1012, 1017 (Alaska 2009) (second alteration in original) (first quoting *Dieringer v. Martin*, 187 P.3d 468, 473-74 (Alaska 2008); then quoting *Petrolane Inc. v. Robles*, 154 P.3d 1014, 1026 (Alaska 2007)).

the superior court found that Moore was not entitled to represent the entire class,[53] there is no evidence that he sought to represent the entire class. Moore filed a motion on his own behalf, and he only indicated that he sought to represent the *Cleary* class in his motion for reconsideration after Judge Suddock denied his initial motion for failing to indicate that he sought to represent the *Cleary* class.

## V.   CONCLUSION

We REVERSE the superior court's order dismissing the prisoners' motions and REMAND for further proceedings.

---

[53]   *See Hertz v. Cleary*, 835 P.2d 438, 442 n.3 (Alaska 1992) ("[A]s a pro se plaintiff, Hertz may not properly represent a class.").