NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ROSEMARIE L. HOTCH, ) | |
| ) | Supreme Court No. S-17498 |
| Appellant, ) | |
| ) | Superior Court No. 1JU-76-00516 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| CHILKAT INDIAN VILLAGE ) | AND JUDGMENT* |
| (Klukwan) and STATE OF ALASKA, ) | |
| ) | No. 1798 – October 21, 2020 |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Daniel Schally, Judge.

Appearances: Fred W. Triem, Petersburg, for Appellant. Vance A. Sanders, Sanders Poulson Woolford, LLC, Juneau, for Appellee Chilkat Indian Village (Klukwan). Notice of nonparticipation filed by Susan Greenlee Sonneborn, Assistant Attorney General, Anchorage, and Kevin Clarkson, Attorney General, Juneau, for Appellee State of Alaska.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Borghesan, Justice, not participating.]

1. This appeal arises from a 1978 settlement of a 1976 lawsuit about the ownership and disposition of Tlingit artifacts. In that litigation Chilkat Indian Village (Klukwan), referred to here as the Tribe, and three of its members, putatively acting as class representatives of the Frog House members of the Tribe, sued other members of the

---

\* Entered under Alaska Appellate Rule 214.

Frog House to stop them from selling the artifacts. The parties entered into a settlement agreement providing, in relevant part, that the artifacts: (1) belong "to all of the members of the Frog House, Ganaxtedih Clan, of Klukwan" and thereafter would be "under the direct control of the elder Frog House members living in or in close proximity to Klukwan"; (2) ultimately would be "moved to Haines or Klukwan for suitable, safe storage and use by all Frog House members"; and (3) could not otherwise be sold or transferred "except with the unanimous consent of all Frog House members." The settlement agreement also provided that the artifacts would be delivered to the Alaska State Museum in Juneau "for temporary custody." The artifacts were delivered to the State Museum in September 1978; the lawsuit was dismissed with prejudice.

2.     In 2018 the Tribe requested that the State Museum transfer the artifacts to Klukwan's recently completed Cultural Heritage Center. The State Museum made contact with Frog House members and determined there was disagreement about the artifacts; some members wanted them to go to Klukwan's Heritage Center, but other members wanted them to go to the Sealaska Heritage Institute in Juneau pending creation of a heritage center in Haines. In November the State Museum stated its intention to follow the 1978 settlement agreement and move the artifacts to Klukwan, giving disagreeing Frog House members an opportunity to seek judicial relief.

3.     In January 2019 Rosemarie Hotch, a self-represented descendant of one of the 1970s litigation's plaintiffs, filed motions in the long-closed case seeking on an expedited basis to block the artifacts' move to Klukwan. Procedural wrangling ensued, which does not need to be discussed other than that: (1) counsel appeared in the litigation to represent Hotch; (2) the State was joined as a party and ordered to not move the artifacts pending further order of the court; (3) the Tribe opposed Hotch's motion for injunctive relief barring the move contending, among other things, that Hotch had no standing to act in the case; (4) Hotch responded with a motion seeking to align parties

or intervene; and (5) the Tribe filed a consolidated response, arguing that the move was appropriate under the 1978 settlement agreement. Among the material legal issues raised were whether: (1) Hotch had party status or other standing to litigate and obtain relief; (2) the 1978 settlement and judgment should be reopened and changed; and (3) the 1978 settlement's terms allowed moving the artifacts to the Heritage Cultural Center in Klukwan.

4. The superior court ultimately concluded that the law of the case doctrine precluded Hotch's claims. The court vacated the temporary restraining order and directed the State Museum to transfer the artifacts to Klukwan's Heritage Center. Hotch appeals.[1] The parties make much of the issues about Hotch's standing to assert her claims and seek relief, but we will assume Hotch has standing and address only the merits of the court's decisions that: (1) the law of the case doctrine barred Hotch's claims; (2) there was no basis to reopen the 1978 settlement and judgment; and (3) the proposed artifacts move was consistent with and authorized by the 1978 settlement.

5. The law of the case doctrine provides that issues previously adjudicated be reconsidered only when there exist " 'exceptional circumstances' presenting a 'clear error constituting a manifest injustice.' "[2] Our law of the case doctrine generally refers to issues previously "reviewed at the *appellate* level," but "the doctrine is equally applicable to issues . . . fully litigated in the superior court" if no timely appeal was

---

[1] Two other individuals are named as appellants in Hotch's appeal paperwork, but nothing in the record reflects that they sought to intervene or otherwise be a party or that they acted in any way as self-represented litigants in the superior court. Their names have been removed from the caption for this appeal.

[2] *State, Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 859 (Alaska 2003) (footnote omitted) (first quoting *Patrick v. Sedwick*, 413 P.2d 169, 173-74 (Alaska 1966); then quoting *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.*, 778 P.2d 581, 583 (Alaska 1989)).

made.[3] Issues regarding the ownership and disposition of the artifacts were litigated and settled in the superior court in the 1970s and no appeal was made.[4] Hotch demonstrated no exceptional circumstances or clear error constituting a manifest injustice if the settlement were left in place. Nothing in the superior court's decision affects the Frog House members' ownership of the artifacts or the direct control of the artifacts by Frog House elders in the Klukwan area. We conclude that the court did not abuse its discretion by determining that the law of the case doctrine prevents reconsideration of the 1978 settlement agreement's language 40 years later.[5]

6. Hotch argues that the superior court should have granted her relief under Alaska Civil Rule 60(b)(5) or (6).[6] A motion for relief under these subsections must "be

---

[3] *Dunlap v. Dunlap*, 131 P.3d 471, 475-76 (Alaska 2006) (emphasis in original).

[4] Generally "[t]he law of the case doctrine presumes a hearing on the merits." *Carlson*, 65 P.3d at 859 n.55 (quoting *United States. v. Hatter*, 532 U.S. 557, 566 (2001)). There was not a hearing on this case's merits in the 1970s; instead, the parties reached a settlement. Hotch did not raise this point in the superior court or on appeal. But we also have recognized: "[A] stipulation [to dismiss claims with prejudice] is just as valid as a final judgment resulting from a trial on the merits, and is res judicata as to all issues that were raised or could have been determined under the pleadings." *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997) (alterations in original) (quoting *Tolstrup v. Miller*, 726 P.2d 1304, 1306 (Alaska 1986)). The law of the case doctrine is based on the same principles as res judicata. *See Barber v. State, Dep't of Corr.*, 393 P.3d 412, 419 (Alaska 2017); *Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 763 (Alaska 1977). The stipulation to dismiss the 1970s litigation with prejudice therefore is sufficient for law of the case purposes on the facts of this case.

[5] We review a trial court's application of the law of the case doctrine for abuse of discretion. *Robert A. v. Tatiana D.*, ___ P.3d ___, Op. No. 7477 at 7, 2020 WL 4724484, at *3-4 (Alaska Aug. 14, 2020).

[6] These subsections provide for relief from a final judgment under the
(continued...)

made within a reasonable time."[7] Hotch provides no support for an argument that the 1978 judgment has been "satisfied, released, or discharged." And the final catch-all subsection "is reserved for extraordinary circumstances not covered by the preceding [subsections of the Rule]."[8] We have recognized that the purpose of this subsection is to grant relief when a "judgment was obtained by the improper conduct of the party in whose favor it was rendered or the judgment resulted from the excusable default of the party against whom it was directed under circumstances going beyond the earlier clauses of the rule."[9] The subsection "is not for the purpose of relieving a party from free, calculated, and deliberate choices he [or she] has made."[10] No evidence in the record

---

[6]      (...continued)
following circumstances:

> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

We review the superior court's decision to grant or deny such relief for abuse of discretion, which occurs when "the trial court's decision was 'manifestly unreasonable.' " *Johnson v. Johnson*, 394 P.3d 598, 600-01 (Alaska 2017) (quoting *In re Hospitalization of Jacob S.*, 384 P.3d 758, 763 (Alaska 2016)).

[7]      Alaska R. Civ. P. 60(b).

[8]      *O'Link v. O'Link*, 632 P.2d 225, 229 (Alaska 1981); *accord Bjorn-Roli v. Mulligan*, 436 P.3d 962, 974-75 (Alaska 2019); *Brennan v. Brennan*, 425 P.3d 99, 112 (Alaska 2018); *Gross v. Wilson*, 424 P.3d 390, 398 (Alaska 2018).

[9]      *O'Link*, 632 P.2d at 229 (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2864, at 213-14 (1973)).

[10]      *Id.* at 229-30 (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
(continued...)

suggests that the 1978 settlement was not a result of the "free, calculated, and deliberate choices" of the parties.[11]  And the fact that 40 years later a descendant of one of the original plaintiffs does not agree with the settlement terms is not an "extraordinary circumstance" justifying Rule 60(b) relief (but certainly reflects an unreasonable delay in seeking relief).

7.      Hotch finally asserts that the settlement agreement's language provides that the items should not go to the Heritage Center.[12]  Hotch argues that the settlement agreement provides that the artifacts belong to the Frog House members and are not owned by the Tribe but that by ordering the artifacts be moved to the Heritage Center the court gave them to the Tribe instead of to the Frog House members.  Hotch also argues that the settlement could not have intended for the artifacts to go to the Heritage Center because that facility had not been planned until 2002 and was not built until 2016, decades after the settlement was reached.

---

[10]      (...continued)
FEDERAL PRACTICE & PROCEDURE § 2864, at 213-14 (1973)).

[11]      *See id.* at 230 (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2864, at 213-14 (1973)).

[12]      "Courts will treat settlement agreements as contracts provided they meet minimal contractual requirements." *Crane v. Crane*, 986 P.2d 881, 885 (Alaska 1999). And "[w]hen a stipulation is admitted by both parties or their attorneys in open court and there is no dispute as to the material terms of the settlement, the stipulation is enforceable." *Id.*  Because the stipulation containing all essential terms was entered by the parties in this case in open court and approved by the court, it is enforceable. "Questions of contract interpretation are generally questions of law which will be reviewed de novo." *Estate of Polushkin ex rel. Polushkin v. Maw*, 170 P.3d 162, 167 (Alaska 2007).  And "[t]he question of the meaning of a written contract, including review of the extrinsic evidence to determine whether any of the extrinsic evidence is conflicting, is a legal question which [this court] review[s] de novo." *Id.*

"The goal of contract interpretation 'is to "give effect to the reasonable expectations of the parties." ' "[13]  The settlement provided that the artifacts "shall belong to all of the members of the Frog House, Ganaxtedih Clan, of Klukwan, including the members of the Salmon Hole House" and that the items "shall be under the direct control of the elder Frog House members living in or in close proximity to Klukwan."  The settlement required these items ultimately be "moved to Haines or Klukwan for suitable, safe storage and use by all Frog House members there" and prohibited other "sale or transfer except with the unanimous consent of all Frog House members."  The artifacts were placed in the State Museum until an appropriate facility in either Klukwan or Haines was established to hold the artifacts.  The completed Heritage Center is located in Klukwan, and there is evidence in the record that it can provide "suitable, safe storage" for the objects.  Hotch acknowledges that there currently is no suitable facility in Haines for the artifacts.  The 1978 settlement language thus indicates it was proper to order the objects transferred to the Heritage Center.  The order does not affect either the ownership of the artifacts or the requirement that the artifacts be under the direct control of the elder Frog House members living in or near Klukwan.  Any dispute about what should happen to the artifacts after transfer to the Heritage Center is not an issue resolvable in the context of the underlying 1970s lawsuit or this appeal.

8.    The superior court's decision is AFFIRMED.

---

[13]    *Graham v. Municipality of Anchorage*, 446 P.3d 349, 352 (Alaska 2019) (quoting *Stepanov v. Homer Elec. Ass'n*, 814 P.2d 731, 734 (Alaska 1991)).