**Paul A.L. NELSON, Appellant,**

v.

**Loretto L. JONES, Appellee.**

**No. S–7760.**

Supreme Court of Alaska.

Sept. 5, 1997.

Rehearing Denied Oct. 3, 1997.

---

Paul A.L. Nelson, pro se, Haines.

Keith B. Levy, Law Offices of Keith B. Levy, Juneau, for Appellee Minor Child.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

This appeal is from the superior court's order denying Paul Nelson's motion to modify child visitation. Nelson contends that the court, by denying all past motions to modify visitation, has effectively terminated his parental rights. Since we conclude that Nelson's parental rights have not been terminated, we affirm the superior court's order.

### II. FACTS AND PROCEEDINGS

Paul Nelson and Loretto Jones had one child during their two-year marriage.[1] After three days of testimony during their divorce trial, they stipulated to issues of custody and visitation. The stipulation provided that "the court finds clear and convincing evidence that [T.] was sexually abused by her father." Asked in open court if he approved the stipulation, Nelson stated, "Yes ... with the understanding that it is not an admission of guilt." The trial court entered a memorandum decision and order which incorporated the stipulation. The court ordered that Nelson have supervised visitation, conditioned upon Nelson's participation in a sex-offender treatment program.

Nelson began the program, but refused to admit in therapy that he sexually abused T. Dr. Anthony Mander, the court-appointed therapist, terminated treatment, believing that patients in denial of having committed abuse are untreatable. Jones then refused all further visitation between Nelson and T. In 1987, Nelson moved to enforce visitation rights with T.

In denying Nelson's 1987 motion, the trial court observed, "[p]ast experience with [Nelson] shows that he will not follow the rules of supervision, that he will attempt—using counsel when necessary—to overcome and defeat the controls placed upon him by the supervisor." In Nelson's appeal of that denial, we stated, "[Nelson] violated the court's orders by initiating or encouraging physical contact between him and T." *Nelson v. Jones,* 781 P.2d 964, 969 (Alaska 1989). We concluded that "[e]xpert testimony and [Nelson]'s behavior both suggest that even supervised visitation could be harmful to T. The trial court did not clearly err in concluding that 'the risk of continuing, long lasting emotional harm to T. from contact with Nelson while he remains in denial is too great to be tolerated.' " *Id.*

We also specifically reviewed the trial court's conditioning Nelson's visitation of T. upon his admission that he abused her; we upheld the trial court's order. *Id.* We concluded that the trial court did not clearly err in concluding that Nelson sexually abused T., and therefore did not abuse its discretion in conditioning supervised visitation on Nelson's participation in sex-offender treatment. *Id.* at 969–70. Since that appeal, Nelson has filed additional motions to modify visitation. The trial court denied Nelson's next to last motion, because "[n]ot one of the conditions for the renewal of visitation previously set by the trial judge ... has even remotely been met."

In March 1996, Nelson again moved to modify child visitation. In June, the trial court denied, without hearing, Nelson's motion. Nelson appeals, charging that the cumulative effect of the superior court's orders is a termination of his parental rights.

### III. DISCUSSION

#### A. Standard of Review

Custody issues are reviewed under an abuse of discretion standard. *See Horutz v. Horutz,* 560 P.2d 397, 399 (Alaska 1977). "Abuse of discretion is established if the trial court considered improper factors or failed to consider statutorily-mandated factors, or im-

---

1. T., born in 1983, is now 14 years old.

properly weighted certain factors in making its determination." *Gratrix v. Gratrix,* 652 P.2d 76, 80 (Alaska 1982). A trial court's factual findings are reversed only if they are clearly erroneous. *See Horutz,* 560 P.2d at 399. A finding is clearly erroneous if it leaves the court with "a definite and firm conviction on the entire record that a mistake has been made." *City of Hydaburg v. Hydaburg Co–op. Ass'n,* 858 P.2d 1131, 1135 (Alaska 1993) (quoting *Parker v. Northern Mixing Co.,* 756 P.2d 881, 891 n. 23 (Alaska 1988)).

**B.** *The Trial Court Did Not Exceed Its Jurisdiction and Effectively Terminate Nelson's Parental Rights.*

■ Alaska provides for the termination of parental rights only in the context of child in need of aid (CINA) proceedings under AS 47.10.080 [2] and adoption proceedings under AS 25.23.180.[3] *See Perry v. Newkirk,* 871 P.2d 1150, 1151 (Alaska 1994).

Nelson contends that while the trial court never formally terminated his parental rights, it did so in practical effect by depriving him of all visitation with T. for almost ten years. He has repeatedly moved to modify the visitation order, but has been denied each time. He argues that these facts constitute a *de facto* termination of his parental rights.

■ The gravamen of Nelson's argument is that he is innocent of·sexual abuse, and therefore he still may appeal the condition attached to his visitation rights. However, the conditioning of Nelson's visitation on participation in a sex-offender treatment program was addressed in a previous appeal. He may not now raise that issue. In 1987, the trial court found:

2. AS 47.10.080(c)(3) provides in part:
   If the court finds that the minor is a child in need of aid, it shall by order, upon a showing in the adjudication by clear and convincing evidence that there is a child in need of aid ... as a result of parental conduct and upon a showing in the disposition by clear and convincing evidence that the parental conduct is likely to continue to exist if there is no termination of parental rights, terminate parental rights....

3. AS 25.23.180(c) provides in part: "The relationship of parent and child may be terminated

The court was well aware that the first step—and an absolutely indispensable step—in that treatment is a full admission of the offense and its cause to the treatment provider, the victim, and others directly involved. (Given the ... lengthy involvement of experts in this case, Nelson also must have been fully aware of this at the time.) · The court had previously terminated Nelson's supervised visitation, pendente lite, because of his repeated and increasingly flagrant disregard of the rules governing the visits. ·And the court perceived no way in which visitation would not be harmful to [T.] until after Nelson had begun an effective course of treatment.[4]

In the 1989 appeal, this court reviewed the trial court's decision to condition supervised visitation on Nelson's admitting in therapy his sexual abuse of T. We concluded that it was not an abuse of discretion. We stated:

[T]he [trial] court did not err in finding again that [Nelson] had abused his daughter. A more difficult question is whether, in light of its finding of abuse, the trial court abused its discretion in conditioning further visitation by [Nelson] upon his admission that he abused T.... ·Though the trial court's order is severe, its severity is justified by the overriding need to protect T. from further harm.... [Nelson] violated the court's orders by initiating or encouraging physical contact between him and T.... Expert testimony and [Nelson]'s behavior both suggest that even supervised visitation could be harmful to T. The trial court did not clearly err in concluding· that "the risk of continuing, long lasting emotional harm to T. from contact with Nelson while he remains in denial is too great to be tolerated."

by a court order issued in connection with a proceeding under this chapter...."

4. This directly contradicts Nelson's continued proclamation that "Nelson never got a hearing at which ANYBODY proved that ending visitation served [T.]'s best interest." In fact, the trial court referred to "lengthy post-judgment evidentiary hearings" concerning "Nelson's sexual abuse of his daughter" and "other evidence bearing on Nelson's motions" (including motions regarding Nelson's visitation).

*Nelson,* 781 P.2d at 969. Even though we acknowledged the seriousness of conditioning Nelson's visitation on his admitting the abuse, we still concluded that the condition was not the product of an abuse of discretion.

■ Because Nelson can attempt to re-establish visitation whenever he chooses, by complying with the trial court's conditions, the trial court found that "[o]f course, Nelson's parental rights have not been terminated." We decline to decide whether a court could constructively terminate parental rights in the manner asserted by Nelson, because we conclude that the trial court's restriction on visitation is not, in effect, a termination of Nelson's parental rights.

### C. The Trial Court Did Not Err by Denying Nelson an Evidentiary Hearing.

■ The trial court is not required to hold a hearing whenever a parent moves for a change in visitation. *See Carter v. Brodrick,* 816 P.2d 202, 204 (Alaska 1991). "[T]he court has discretion to deny a hearing where no showing has been made of changed circumstances or of an alteration in the best interests of the child." *Id.* (denying an evidentiary hearing where father makes prima facie showing of changed circumstances is an abuse of discretion) (quoting *Deivert v. Oseira,* 628 P.2d 575, 579 (Alaska 1981)). "While a trial court must consider all motions for a change in custody, it is not required to

grant a hearing on the motion if it is plain that the facts alleged in the moving papers, even if established, would not warrant a change." *Id.* (quoting *Deivert,* 628 P.2d at 578).

■ Since no facts are disputed with respect to the child's present desire to see Nelson,[5] there are no factual issues which an evidentiary hearing would flesh out. Based on undisputed facts and the record, there was no change in circumstances which would require inquiry into the best interests of the child. Also, for this reason, no evidentiary hearing was required.[6]

### D. The Trial Court Used the Standard of the Child's Best Interest in Conditioning Visitation.

■ A court may modify visitation rights if it finds both a change in circumstances and that the modification is in the best interests of the child:

> An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child.

AS 25.20.110(a). In denying Nelson's motion to modify, the trial court determined that "Nelson has already received a hearing on this issue, and the court has determined that the conditions placed on the resumption of

---

**5.** The trial court quoted T.'s counsel in its opinion:

> The only change in circumstance since the last motion is simply the passage of time.... *The minor child still opposes Nelson's motions for modification and other legal actions he purportedly undertakes on her behalf. If the passage of time has any effect, it only serves to emphasize the child's steadfast desire to keep the visitation limitations in effect.... T. is now a teenager and her preferences deserve serious consideration. T. does not want further motions, hearings or orders. T. does not want visitation reinstated. It is T.'s desire that this endless stream of litigation come to an end.* (alteration in original).

**6.** Nelson raises constitutional first and fifth amendment violations for the first time in his appellate brief, having failed to argue them in his motion to modify visitation. We decline to review these issues. *See, e.g., Tommy's Elbow*

*Room, Inc. v. Kavorkian,* 754 P.2d 243, 245 n. 7 (Alaska 1988) (holding that argument first raised on appeal will not be addressed). Nelson, as a *pro se* appellant, is allowed a more lenient standard in his pleadings. *See, e.g., Zok v. State,* 903 P.2d 574, 576 n. 2 (Alaska 1995) (holding *pro se* litigants to less stringent standards than lawyers). However, Nelson raised these constitutional claims in federal court in August 1993, showing that he was aware of the issues.

Nelson also argues that T.'s constitutional and civil rights are violated as well as his own. It is worth noting that T. opposes all visitation with her father. The trial court rejected Nelson's assertion of T.'s rights:

> T. is represented by counsel in this proceeding. Counsel for T. has not voiced these concerns; indeed, on behalf of T., she takes the *opposite* position. In these circumstances, there is no reason to conclude that T.'s rights have been violated by her lack of visitation with plaintiff. T. *opposes* visitation with plaintiff.

visitation between Nelson and T. are in T.'s best interests."

We conclude that the court specifically considered the child's best interests, and therefore committed no error.[7]

## IV. CONCLUSION

We conclude that Nelson's parental rights have not been terminated. Also, since it is undisputed that the child continues to oppose visitation, Nelson failed to show the change in circumstances needed to warrant an evidentiary hearing. Nelson's other arguments are without merit. The judgment of the superior court is AFFIRMED.

---

**7.** Nelson argues that the trial court did not use the standard of the child's best interest when ordering visitation in 1987. To the extent that the earlier appeal does not directly address the best interests of the child, Nelson is foreclosed from now raising the issue.