*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ROBERT A., | ) | |
| | ) | Supreme Court No. S-17255 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-10-00753 CI |
| v. | ) | |
| | ) | O P I N I O N |
| TATIANA D., | ) | |
| | ) | No. 7486 – October 23, 2020 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Mary Alice McKeen, Juneau, for Appellant. Jahna M. Lindemuth and Samuel G. Gottstein, Holmes Weddle & Barcott, PC, Anchorage, and Michael L. Lessmeier, Lessmeier & Winters, LLC, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

In its initial custody decision the superior court found that a father had a history of committing domestic violence, and it therefore established benchmarks for him to meet before he could begin supervised visitation with his children. The father did not appeal that decision. He nonetheless sought to relitigate the domestic violence finding in subsequent proceedings, but the superior court ruled that relitigation of the issue was barred by collateral estoppel.

Following an extended evidentiary hearing, the superior court found that the father had met the benchmarks set by the earlier order and conditionally granted his request that he be allowed to begin supervised visitation. But the superior court also said that because of the "challenging" nature of the case it could not approve a visitation plan without more detail, such as the identity of individuals willing to act as counselors and visitation coordinators and how the parties would pay for their services.

The father appeals the superior court's order granting in part his motion for supervised visitation, including its application of collateral estoppel to the earlier finding of domestic violence. Because we conclude that the superior court did not abuse its broad discretion or otherwise err in this custody case, we affirm its visitation order.

## II.    FACTS AND PROCEEDINGS

Robert A. and Tatiana D.[1] have a son and a daughter together; they also have several older children with former partners. Robert and Tatiana ended their relationship in 2010 following allegations that Robert had sexually abused their son and Tatiana's older son, N.C.

After a custody trial in late 2011, the superior court, in a May 2012 order, awarded Tatiana sole legal and primary physical custody of the couple's two children. The court found by a preponderance of the evidence that Robert had committed acts of sexual abuse against N.C., though it found insufficient evidence to conclude that he had also abused the couple's son. The court's finding about N.C.'s abuse was supported by two independent medical evaluations as well as testimony about the child's behavior and mental health. Robert had disputed the sexual abuse allegations at trial, but the court did not find him credible and gave his testimony little weight.

---

[1]    We use pseudonyms and initials to protect the parties' privacy.

The 2012 custody order required Robert to "have a psychological evaluation with a licensed provider trained in the treatment of sexual offenders" and to "comply with all treatment recommendations." He was not allowed visitation "initially" but could begin it under certain conditions:

> If the children's therapist(s) and the sex offender provider believe it is appropriate for supervised visitation to begin once [Robert] is engaged in treatment, [Robert] may file a motion with the court for approval of limited supervised visitation. If such a motion is filed, the court will appoint a guardian ad litem to make recommendations about whether and how supervised visitation should begin.

Robert did not appeal the 2012 order.

Over the next several years Robert filed a number of motions to modify the custody order or to begin supervised visitation, but his motions were denied on grounds that he had not yet satisfied the 2012 order's conditions. He brought another motion to begin supervised visitation in 2016, and the court held an evidentiary hearing over eight days in 2017 and 2018. During the course of this proceeding Robert made repeated attempts to relitigate the 2012 finding of sexual abuse, but the court rejected these attempts, ruling that relitigation of the issue was barred by collateral estoppel.

In a written order following the hearing, the superior court granted in part Robert's motion to begin supervised visitation. The court concluded that Robert had substantially complied with the requirements of the 2012 order and it was therefore "appropriate for supervised visitation to begin," though with caveats. The court noted that "[t]he process of resumption of visitation would, undoubtedly, be extremely challenging," primarily because the children were afraid of Robert and would need counseling to address that fear. The court therefore wanted to have "a specific plan and [to know] what professionals would be involved." The court believed that a definitive best interests determination was not possible "without knowing who would supervise the

children, what counselor would be available to work with the children, how much this would cost, and who could afford to pay for these services."

Robert appeals, arguing essentially two points: (1) that the court should have allowed him to relitigate the 2012 sexual abuse finding, and (2) that he met the benchmarks for supervised visitation set by the superior court's 2012 order and was therefore entitled to an unequivocal order permitting visitation.

## III. STANDARD OF REVIEW

The superior court has "broad discretion in child custody decisions."[2] We review visitation decisions for abuse of discretion.[3] "A decision constitutes abuse of discretion if it is 'arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive.' "[4]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Declining To Allow Relitigation Of Its 2012 Sexual Abuse Finding.

In 2012 the superior court found by a preponderance of the evidence that Robert committed acts of sexual abuse against N.C. and therefore had a history of perpetrating domestic violence, a conclusion which by statute has further repercussions in custody proceedings.[5] Although the court found that Tatiana also had a history of perpetrating domestic violence, it awarded her sole legal and primary custody because

---

[2]    *Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019) (quoting *Geldermann v. Geldermann*, 428 P.3d 477, 481 (Alaska 2018)).

[3]    *John E. v. Andrea E.*, 445 P.3d 649, 658 (Alaska 2019).

[4]    *Id.* at 654 (alteration in original) (quoting *del Rosario v. Clare*, 378 P.3d 380, 383 (Alaska 2016).

[5]    *See* AS 25.24.150(g)-(j).

-4-                                                                    7486

of its finding that she was "less likely to continue to perpetrate the violence"[6] in the future. Robert did not appeal the 2012 order. The parties' custody dispute continued, however, and in a 2018 order on pending motions the superior court observed that "it ha[d] been a consistent feature of [Robert]'s litigation strategy to suggest that the finding of sexual abuse was incorrect." The court applied the doctrine of collateral estoppel to prevent Robert from relitigating the sexual abuse allegations in the then-ongoing evidentiary hearing on visitation,[7] and Robert now challenges that decision. We conclude that although the superior court should have applied a different doctrine — the law of the case rather than collateral estoppel — its decision to prevent relitigation of the sexual abuse issue was not an abuse of discretion.

Collateral estoppel "limits the relitigation of an issue in a subsequent suit, as opposed to a subsequent stage of the same suit," whereas the law of the case doctrine "limits redetermination of rulings made earlier *in the same lawsuit*."[8] The preclusive effect of the law of the case doctrine extends to "the reconsideration of issues which have

---

**6** *See* AS 25.24.150(i) (providing that when both parents have a history of perpetrating domestic violence, the court shall either (1) award sole legal and physical custody to the parent who is less likely to continue to perpetrate violence and require custodial parent to complete a treatment program; or (2) if necessary to protect the welfare of the child, award custody to a suitable third party).

**7** At the same time, the superior court denied Tatiana's motion to preclude future attempts by Robert to relitigate the sexual abuse issue, noting that "it would be inappropriate to preclude such an attempt without knowing the grounds upon which it might hypothetically be sought."

**8** *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317 (7th Cir. 1995) (emphasis in original); *see also Money v. Tyrell Flowers*, 748 N.W.2d 49, 60 (Neb. 2008) ("Unlike the doctrines of res judicata and collateral estoppel, which involve successive suits, the law-of-the-case doctrine involves successive stages of one continuing lawsuit.").

been adjudicated in a previous appeal in the same case."[9] And "the doctrine is equally applicable to issues that have been fully litigated in the superior court and as to which no timely appeal has been made."[10] Thus a final judgment that could have been appealed but was not — like the superior court's 2012 custody order in this case — becomes law of the case.[11]

In his challenge to the superior court's use of collateral estoppel, Robert argues that the issue decided in 2012 (following the 2011 trial) was not identical to the one he sought to litigate in the 2017-2018 evidentiary hearing. He argues that the 2011 trial was for the purpose of determining what conditions should be placed on visitation, whereas the 2017-2018 evidentiary hearing was for the purpose of determining whether, having met those conditions, he could begin visitation and if so under what terms. But the superior court expressly applied collateral estoppel to a specific finding — "whether [Robert] sexually abused N.C." — not to the legal consequences of that finding — whether and on what conditions visitation could begin. Robert recognized this in the superior court, devoting many pages in his motion for supervised visitation to "facts that call into question the court's original finding" of sexual abuse. A specific issue of fact is a proper subject for law of the case as well as for collateral estoppel.[12]

---

[9] *Barber v. State, Dep't of Corr.*, 393 P.3d 412, 419 (Alaska 2017) (quoting *Beal v. Beal*, 209 P.3d 1012, 1016 (Alaska 2009)).

[10] *Id.* (quoting *Dunlap v. Dunlap*, 131 P.3d 471, 476 (Alaska 2006)).

[11] *Id.*

[12] *See Andrea C. v. Marcus K.*, 355 P.3d 521, 527 (Alaska 2015) ("[C]ollateral estoppel bars relitigaton of all issues of fact . . . that were actually litigated and necessarily decided in [a] prior proceeding." (alterations in original) (quoting *Wall v. Stinson*, 983 P.2d 736, 740 (Alaska 1999))); Dieringer v. Martin, 187 P.3d 468, 473-74 (Alaska 2008) (applying law of the case doctrine to factual issues involving

(continued...)

If the elements of the law of the case doctrine are met, the superior court still has discretion whether to apply it, because it " 'is not an absolute rule of law' but rather 'a matter of sound judicial policy.' "[13] We have no doubt, however, that the superior court would have reached the same conclusion about the sexual abuse claim had it applied the law of the case doctrine, and its decision to apply collateral estoppel instead therefore does not affect our review.[14] In fact, in one of the court's oral discussions of the issue several years before the custody order now on appeal, it suggested that the settled fact of sexual abuse was subject to the law of the case doctrine, noting that

---

[12]    (...continued)
defendant's management of estate); *Rooney v. Rooney*, 914 P.2d 212, 216 (Alaska 1996) (applying law of the case doctrine to issue of biological parentage). Robert briefly makes several related arguments. He argues that the issues are not identical because the parties had different burdens of proof in 2011 and 2018, but the burden of proof in both instances was a preponderance of the evidence, as we explain below. Robert also argues that the 2012 finding that he "sexually abused N.C. . . . more than once" is too non-specific to be a valid finding of "a history of perpetrating domestic violence" under AS 25.24.150(g)-(j). But this does not significantly advance Robert's argument, as the court is required to take into account "*any* evidence of domestic violence [or] child abuse" — not just whether there is a history of domestic violence — when making decisions about custody and visitation. AS 25.24.150(c)(7) (emphasis added).

[13]    *Hallam v. Holland Am. Line, Inc.*, 180 P.3d 955, 958 (Alaska 2008) (quoting *West v. Buchanan*, 981 P.2d 1065, 1067 (Alaska 1999)), *see id.* at 959 ("[T]he law of the case doctrine implicates a court's discretion.").

[14]    *See Leahy v. Conant*, 436 P.3d 1039, 1043 (Alaska 2019) ("We may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party." (quoting *Brandner v. Pease*, 361 P.3d 915, 920 (Alaska 2015))); *State & Cty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 698 (Tex. 2001) (concluding that law of the case doctrine was inapplicable but affirming on collateral estoppel grounds).

whether to allow relitigation of the issue was ultimately discretionary regardless of the doctrine used.

In the collateral estoppel context, the court's discretion to apply the doctrine, assuming that the underlying elements are satisfied, is "tempered by principles of fairness in light of the circumstances of each particular case."[15] In the law of the case context the court's discretion is more strictly bounded: "[I]ssues previously adjudicated can only be reconsidered where there exist exceptional circumstances presenting a clear error constituting a manifest injustice."[16] A court that declines to review an issue because fairness does not require it "in light of the circumstances" clearly has not found "exceptional circumstances presenting a clear error constituting a manifest injustice."

We need only consider, therefore, whether the record shows such "exceptional circumstances" that it was an abuse of discretion not to allow Robert to relitigate the sexual abuse claim. He argues that the court misinterpreted some of the evidence in making its 2012 finding, and that other evidence — particularly physical symptoms relied on by one of the testifying doctors — would be considered unreliable "under current guidelines." He argues that when he obtained transcripts of the forensic interviews of the children in 2017 it was a "bombshell development," and he faults the attorney who represented him at the 2011 trial both for "inadequately challeng[ing] the medical evidence" and for failing to timely acquire the investigative materials.

The superior court, observing that the investigative materials existed at the time of the 2011 trial, assumed that Robert's then attorney should have done more to

---

[15]    *McAlpine v. Pacarro*, 262 P.3d 622, 627 (Alaska 2011) (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1040 (Alaska 2010)).

[16]    *State, Commercial Fisheries Entry Comm'n v. Carlson* (*Carlson V*), 270 P.3d 755, 760 (Alaska 2012) (quoting *State, Commercial Fisheries Entry Comm'n v. Carlson* (*Carlson III*), 65 P.3d 851, 859 (Alaska 2003)).

acquire them and that the attorney's performance may have fallen short in other respects. The court nonetheless concluded that Robert received "a full and fair hearing" and had not shown that the outcome would have been different with different representation; the sexual abuse finding, the court said, was based primarily on credibility determinations, not "on whose lawyer did a better job."

We note also that over a decade has passed since N.C. made his allegations of sexual abuse, and the parties litigated custody issues for years in light of the court's 2012 findings on the subject.[17] With the passage of time the value of new evidence may be offset by failures of memory.[18] And we have emphasized the special importance of finality in custody matters.[19]

We are not persuaded that "there exist exceptional circumstances presenting a clear error constituting a manifest injustice"[20] that would require making an exception

---

[17]    *Cf. Rivera-Flores v. P.R. Tel. Co.*, 64 F.3d 742, 746 (1st Cir. 1995) ("Trial courts as a rule act within their discretion in refusing to reopen a case where the proffered 'new' evidence is insufficiently probative to offset the procedural disruption caused by reopening.").

[18]    *See Wade v. Brady*, 460 F. Supp. 2d 226, 247-48 (D. Mass. 2006) ("[T]he chance of reliable adjudication may decrease in a subsequent trial because the truth-finding value provided by new evidence is outweighed by the inevitable erosion of memory and dispersion of witnesses that happens over time.").

[19]    *See McAlpine*, 262 P.3d at 626 ("Our cases demonstrate that the change in circumstances requirement for custody modification 'is intended to discourage continual relitigation of custody decisions, a policy motivated by the judicial assumption that finality and certainty in custody matters are critical to the child's emotional welfare.' " (quoting *Peterson v. Swarthout*, 214 P.3d 332, 340-41 (Alaska 2009))).

[20]    *Carlson V*, 270 P.3d at 760 (quoting *Carlson III*, 65 P.3d at 859).

to the law of the case doctrine. The superior court did not abuse its discretion when it refused to allow Robert to relitigate the 2012 finding of sexual abuse.[21]

**B.**     **The Superior Court Did Not Err Or Abuse Its Discretion When It Granted Robert's Motion In Part And Requested More Information Before Ordering That Supervised Visitation Could Begin.**

The superior court granted Robert's motion for supervised visitation in part. The court determined that Robert, having obtained an evaluation with a licensed provider and having followed the provider's recommendations, met the benchmarks for supervised visitation set out in the 2012 order, and therefore "supervised visitation should commence, if a suitable plan can be developed to do it safely and without harm to the children." The court found that these caveats prevented it from entering an order "that supervised visits begin immediately": "[T]he court cannot grant this request without knowing who would supervise the children, what counselor would be available to work with the children, how much this would cost, and who could afford to pay for these services."

The court had expressed the same reservations orally during the evidentiary hearing. Noting that its task was to decide "whether the visitation that's requested would be harmful to the children," the court observed that "the devil's in the details": "What makes that decision hard here is that what I'm largely being asked to decide upon is the abstract concept of supervised visitation, not a particular plan for the institution of supervised visitation." Robert responded to the court's concern by presenting, in his

---

[21]     Robert also argues that the superior court erred by failing to consider exceptions to the collateral estoppel doctrine applicable when a ruling unforeseeably impacts non-parties or was not fully and fairly adjudicated the first time. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 28(5) (AM. LAW INST. 1982). Robert does not persuade us either that the court failed to consider the Restatement factors or that the court erred by failing to find that they favored Robert.

written closing argument, a 17-point "Implementation Plan" by which he would gradually reenter his children's lives. The plan depended on the involvement of a visitation coordinator, a visitation supervisor, and a counselor for the children; Robert identified individuals he found acceptable for each role.

The court explained in its written order why Robert's proposal did not satisfy its concerns. The court noted that "[t]he process of resumption of visitation" was going to "be extremely challenging" because "[t]he children fear their father, and it is clear that any visitation would have to begin in the context of counseling to address this fear." Assessing the children's best interests required "balancing the effectiveness of [a proposed visitation] plan as a way to reintroduce [Robert] into his children's lives safely against the potential risks or adverse consequences to the children." This assessment required knowing who was actually willing to perform as counselors and supervisors, what their services would cost, and how the parents could pay for them. The court concluded, "Until a specific plan is identified, the court cannot weigh these factors and make a definitive best interests determination." The court invited Robert to move forward by proposing a specific plan and identifying therapists who were actually willing to participate; if Tatiana objected to his proposal, he could "file an appropriate motion." But Robert apparently made no further attempt to satisfy the court's order, instead filing this appeal.

The essence of Robert's argument on appeal is that, having "met the benchmarks for supervised visitation" set by the 2012 order, he was entitled to "an order that supervised visitation is in the best interests of the children and should begin as soon as possible." His argument misinterprets both the 2012 and the 2018 orders. First, the 2012 order did not establish an automatic right to supervised visitation once its "benchmarks" were met. Under the order's express terms, once "the children's therapist(s) and the sex offender [treatment] provider believe it is appropriate for

supervised visitation to begin," Robert could file a motion for "limited supervised visitation," at which point the court would "appoint a guardian ad litem to make recommendations about *whether and how* supervised visitation should begin." (Emphasis added.) "[W]hether and how supervised visitation should begin" was always — appropriately — going to be subject to the court's further consideration of the children's best interests regardless of what Robert had accomplished in the meantime.[22]

Robert also misinterprets the 2018 order on appeal. He claims that the order "continues a denial of supervised visitation that has been in effect for nine years" when it actually *grants* his request for supervised visitation, to begin as soon as a safe plan can be put in place. Robert argues that the order's conditions are so onerous that he cannot reasonably comply with them. He contends that he is caught in a catch-22 in which he is required to line up professionals before the court will approve a visitation plan, whereas the professionals will not agree to work with him in the absence of a court-approved visitation plan.[23] The court acknowledged at the evidentiary hearing that there

---

[22]    As the court observed at the evidentiary hearing, an order allowing visitation to begin automatically once a parent met required benchmarks might not adequately safeguard the children's best interests. The court posed a hypothetical in which a treating therapist determined that the parent was "an unrepentant pedophile" who could not be successfully treated. The court pointed out that it was unlikely visitation would be in the child's best interests even though the benchmark was technically met because the therapist recommended no further treatment. Robert takes issue with the court's use of this hypothetical, which he claims mischaracterizes his own situation, but the court was clearly not describing Robert himself; rather, it was testing the limits of his argument for an "automatic" entitlement to visitation.

[23]    Robert's arguments can be confusing, as they sometimes seem oblivious to the 2018 order's actual terms. He argues, for example, that he "is entitled to a decision in principle that he should have contact with his children even if it takes a while for the details to be worked out." But that is precisely what the superior court ordered: "The court finds that it is appropriate for supervised visitation to begin, in the context of

(continued...)

was a small pool of candidates in Juneau qualified to serve as counselors and that finding the right person "would be challenging," but that it was up to the parties, not the court, to make the effort. And the court's insistence that visitation proceed only with professional support was reasonable even if it presented difficulties for the parties; the court's ultimate responsibility in any visitation order is to ensure that the children's best interests are protected.[24]

Robert also argues that "the superior court's failure to order an immediate start of the process of supervised visitation constitutes an unlawful de facto termination of his parental rights." We considered and rejected an argument like Robert's in *Nelson v. Jones* (*Nelson II*).[25] In that case the superior court ordered that a father accused of sexual abuse be allowed supervised visitation with his child only on condition that he participate in a sex-offender treatment program.[26] The father refused to admit to the abuse in therapy, and his treatment was therefore terminated; years of custody litigation followed.[27] On appeal from the denial of one of several motions for modification of custody, the father argued that the court had terminated his parental rights "in practical

---

[23]    (...continued)
counseling with a reunification therapist," with the details subject to agreement or further motions.

[24]    *See Long v. Long*, 816 P.2d 145, 158 n.12 (Alaska 1991) (noting that in contentious custody case, superior court "should very carefully and precisely fix the terms of visitation to facilitate the chances that the custody and visitation schemes will work in the best interests of the children").

[25]    944 P.2d 476, 479-80 (Alaska 1997).

[26]    *Id.* at 478.

[27]    *Id.*

effect by depriving him of all visitation with [his child] for almost ten years."[28] He argued that he had "repeatedly moved to modify the visitation order, but ha[d] been denied each time," and that "these facts constitute[d] a de facto termination of his parental rights."[29]

In response to this argument, we pointed out that we had decided on an earlier appeal that the superior court did not abuse its discretion by "conditioning [the father]'s visitation on his admitting the abuse."[30] The father could therefore "attempt to reestablish visitation whenever he [chose], by complying with" the conditions we had determined to be reasonable.[31] Regardless of "whether a court *could* constructively terminate parental rights in the manner asserted," we declined to find that termination had occurred.[32]

Robert argues that *Nelson II* supports his argument because, unlike the father in the *Nelson* cases, he *did* comply with the superior court's visitation conditions and visitation was still denied. Again, we are constrained to point out the actual text of the superior court's order: supervised visitation was *granted*, with the details to be

---

[28]     *Id.* at 479.

[29]     *Id.*

[30]     *Id.* at 479-80; *see also Nelson v. Jones* (*Nelson I*), 781 P.2d 964, 969-70 (Alaska 1989) .

[31]     *Nelson II*, 944 P.2d at 480.

[32]     *Id.* (emphasis added); *see also Terry S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 168 P.3d 489, 498 (Alaska 2007) (relying on *Nelson* cases to conclude that superior court's order conditioning visitation on parent's participation in sex-offender treatment did not need to meet beyond-a-reasonable-doubt standard of proof required for termination of parental rights under Indian Child Welfare Act).

worked out to ensure protection of the children's best interests. The court's order was not an abuse of discretion.

### C. The Superior Court Applied The Correct Evidentiary Standard When Granting Robert's Motion In Part.

The superior court did not explicitly state the burden of proof it was applying in the written order under review, although its oral remarks at the close of the evidentiary hearing indicated that it intended to apply the preponderance of the evidence standard generally applicable to civil cases. This was the correct standard,[33] and we assume the superior court applied it absent evidence to the contrary.[34]

Robert takes issue with this, arguing that "[a] court should not be able to deny supervised visitation in a private custody case unless there is clear and convincing evidence to support the denial and a parent has the right to expedited judicial review of the decision," again analogizing the restrictions on his visitation to cases involving the State's termination of parental rights.[35] He argues that a heightened evidentiary standard

---

[33] *See Thompson v. Thompson*, 454 P.3d 981, 990 (Alaska 2019) ("In general, each parent in a custody proceeding must establish by a preponderance of the evidence that the parent's proposed custody plan would serve the children's best interests, including that his or her plan can adequately provide for the children's needs.").

[34] *Wasser & Winters Co. v. Ritchie Bros. Auctioneers (Am.), Inc.*, 185 P.3d 73, 83 (Alaska 2008); *see also Anchorage Police & Fire Ret. Sys. v. Gallion*, 65 P.3d 876, 883-84 (Alaska 2003) (holding that this court "can safely assume the superior court recognized and applied the correct standard" of proof beyond a reasonable doubt when "[t]here [was] no indication the court applied some other standard" and "did not mention the lesser preponderance or clear and convincing standards").

[35] *See K.T.E. v. State*, 689 P.2d 472, 478 (Alaska 1984) (noting that the evidentiary standard to be applied in Child in Need of Aid proceeding when Office of Children's Services denies visitation to parent whose child is in State custody is "clear and convincing evidence . . . that the child's best interests were served by disallowing (continued...)

is required by principles of equal protection and due process, given the law's "extremely strong presumption in favor of [contact] between a child and both parents."[36] This argument fails for several reasons.

First, the argument again ignores the superior court's actual holding in this case. The court did not deny visitation; to the contrary, it concluded that a "complete rejection of any visitation" was not "legally tenable on this record" and that supervised visitation "would be in the best interests of the children" as long as the details could be worked out. Just as a conditional grant of visitation is not the same as a termination of parental rights, so too a conditional grant of visitation is not the same as a denial of visitation.

Second, Robert argues that the superior court should have based its decision to deny visitation on findings made by clear and convincing evidence. But the finding that necessitated supervised visitation in the first place was the 2012 finding of sexual abuse, which was not appealed and, as explained above, is now the law of the case.

## V.    CONCLUSION

The superior court's order granting in part Robert's motion to commence supervised visitation is AFFIRMED.

---

**35**    (...continued)
parental visitations").

**36**    Robert cites *Nelson I* in support of his argument that a clear and convincing standard should apply in a private custody case, but in *Nelson I* the standard was not imposed by the court, but rather was part of the parties' stipulated findings of fact. 781 P.2d 964, 966 (Alaska 1989).

# In the Supreme Court of the State of Alaska

**Robert A.,**

Appellant,

v.

**Tatiana D.,**

Appellee.

Trial Court No. **1JU-10-00753CI**

Supreme Court No. **S-17255**

## Order
Petition for Rehearing

Date of Order: **10/23/2020**

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices [Stowers, Justice, not participating].

On consideration of the Petition for Rehearing filed on **9/3/2020**, and the response filed on **9/29/2020**,

**IT IS ORDERED**:

1. The Petition for Rehearing is **GRANTED IN PART.** The phrase "showing the weakness of the police investigation" shall be struck from Page 8.

2. Opinion No. 7477, issued on 8/14/2020, is **WITHDRAWN**.

3. Opinion No. 7486 is issued on this date in its place.

Entered at the direction of the court.

Clerk of the Appellate Courts

_____
Meredith Montgomery

cc: Supreme Court Justices
Judge Pallenberg
Publishers

Distribution:
McKeen, Mary Alice
Lessmeier, Michael L
Lindemuth, Jahna M.
Gottstein, Samuel Gekler